UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:

JAMIE ALLEN TENDAL                                Chapter 7
ANN MARIE TENDAL

    Debtors.                              Bankruptcy No. 04-04072F

## DECISION RE: OBJECTION TO EXEMPTIONS

    Chad LeStrange, the former husband of debtor Ann Marie Tendal, objects to her claims of exemption in her homestead and in an individual retirement account (IRA). Trial of this contested matter proceeding took place on March 23, 2005 in Fort Dodge. David D. Forsyth appeared as attorney for Ms. Tendal. Donald H. Molstad appeared as attorney for Mr. LeStrange.

    I have jurisdiction of this proceeding under 28 U.S.C. § 1334(a) and (e) and pursuant to the order of reference issued by the district court. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

    Chad LeStrange and Ann Marie Tuttle were married in November 1995. At the time, they were living in a house which was owned by Chad's parents and which was located at 703 North 15th Street, Estherville, Iowa. Shortly after the marriage, sometime in 1996, Chad's mother sold her half interest in the property to Chad and Ann for $10,000.00, and Chad's father gifted his half interest to the couple. Ann's father helped the couple by installing siding, new windows and a roof. Ann

operated a hair dressing salon in part of the house.

The couple separated in November 2002. By that time they were experiencing financial difficulties. Ann filed a petition in state court seeking dissolution of the marriage. On October 30, 2003, the Iowa District Court for Emmet County issued its decree dissolving the marriage (Exhibit 1). In the decision, the court identified various issues raised by the parties: "(1) property division; (2) allocation of liabilities; (3) alimony requested by Ann; and (4) attorney fees requested by Ann.... [A]s a result of considerable unsecured credit card debt owed by the parties, additional issues are (1) whether the Court should order the credit card debt to be secured by the parties' homestead, and (2) whether the parties' home should be ordered sold, and if so, the time and method of doing so." (Exhibit 1, page 1.)

At the time of the dissolution, the parties owed $43,182.00 on their home mortgage debt. Ann had a business loan and student loans. There was debt secured by one of the couple's vehicles.

There was substantial credit card debt--$36,185.00 owing on eight cards. The court noted that the handling of the credit card debts was greatly disputed at trial. The court stated:

> Chad's position is that the parties should seek
> protection under federal bankruptcy laws and
> discharge the unsecured indebtedness. Ann's
> position is that she is morally opposed to this
> course of conduct. She is asking that the Court

2

> impose a judicial lien on the parties' homestead to secure the debt. She hopes this will force Chad to refrain from taking bankruptcy, facing loss of the equity in the house. The parties stipulated in Form B of their pretrial stipulation that the house is worth $65,500.00. About $43,000.00 is owed on the house. There is about $22,000.00 of equity in the house.

(Exhibit 1, page 3.)

In light of the very different concerns of the parties, the court arrived at its own solution as to the proper allocation of debts and assets in the property division. The decision stated:

> Ann advances that the marital debt should be paid. On moral grounds she is strongly opposed to seeking a discharge in bankruptcy. Chad's consistent position at trial was that if, in his opinion, he is allocated excessive debt, he will discharge it in bankruptcy. The Court is very concerned that such an eventuality would lead to considerable more strife and would lead almost inevitably to further involvement by this Court. The Court believes a clean break is necessary for these young people to get on with their respective lives as unmarried persons. The Court has therefore chosen to award substantially all of the marital assets to Ann and to allocate also to her most of the marital debt. This is effectuated by reading Exhibits "A" [Assets] and "B" [Liabilities] together. If she chooses, she can liquidate those assets and take very large steps towards liquidating the parties' debt as she seeks. Chad will leave the marriage with modest debt but few assets.

(Exhibit 1, page 4.)

The court awarded the homestead to Ann. The property allocated to Ann was valued at $81,676.00. The property included a Thrivent T.S.A. Account, which was valued at the time of the dissolution trial at $4,641.00. (*Id.*, Exhibit A, Assets.) The court allocated to Chad assets having a value of

3

$4,040.00.  (Id.)

The court allocated to Ann the home mortgage debt, her business loan, her student loans, and one-half of a secured debt against a vehicle.  To Chad, the court allocated one-half of the vehicle debt.  (Id., Exhibit B, Liabilities.)

Also, the court allocated two credit card debts to Chad and six credit card debts to Ann.  The allocation to Ann included the credit card debt to Fleet Card in the amount of $7,318.00 and the credit card debt to GM Mastercard in the amount of $5,909.00.  (Id., Exhibit B, Liabilities.)  Each party was "ordered to assume and pay and indemnify and hold harmless the other from liability upon those debts and obligations allocated to such party...."  (Exhibit 1, page 6, ¶ 4.)

Considering the allocation of assets and liabilities, the net property award to Chad was initially $1,218.00 and net award to Ann was negative $3,923.00.  The court at first equalized the awards by requiring a payment from Chad to Ann in the amount of $3,372.00.  On a motion by Chad for amendment to the court's findings and conclusions, the court, on November 26, 2003, corrected two duplication errors and reduced the equalization payment to $2,024.00.  (Exhibit 2.)

Chad's motion requested also that the court order Ann to pay off immediately the debts assigned to her or to refinance them so as to relieve him of his obligations to those creditors.  (See court order on motion, Exhibit 2.)  The court

4

denied this request.  (Id., page 3.)  With regard to the Thrivent Account, the court amended its decree to award equally to the parties any appreciation in the account above the value at trial, which had been awarded to Ann.  (Id.)

Chad supplemented his motion to amend on November 25, 2003.  (Exhibit B.)  In addition to his previous request that Ann be required to pay the couple's joint debts, he asked the court to amend its decree "to provide that should the Petitioner [Ann] file bankruptcy regarding the debts allocated under the Court's Decree, that such action by the Petitioner is deemed a change in circumstances sufficient to allow the Court to review or adjust the original property settlement between the parties."  (Exhibit B, page 2.)  The court overruled this request.  (Exhibit 3.)

Ann had her maiden name restored.  She later married Jamie Tendal.

Subsequent to the dissolution of their marriage, both Chad and Ann made efforts to reduce Chad's liability on the debts to Fleet Card and to GMC Mastercard.  Chad asked Fleet Card to close the account, but it refused, saying that it would not do so without the authorization of Ann, the primary account holder.  Ann disputes this saying that the account was closed.  Ann testified that at one point she asked Fleet Card if her new husband could take over Chad's debt.  She said Fleet Card refused this request as well as a request that only she be liable for the debt.

5

Subsequent to the divorce, the GM Mastercard account was closed. Also, Ann refinanced the home mortgage, using some of the money to pay off one credit card and to reduce balances on others. Ann continued to use the Fleet Card, and the balance due increased. At the time of the bankruptcy filing, the balance was shown as $14,958.00. The evidence is insufficient to show how much of that amount is owed by Chad. At the time of the bankruptcy filing, the balance due on the GM Mastercard was approximately $5,700.00. The debts to GM Mastercard and to Fleet Card were the only two credit card debts which remained under Ann's obligation to assume credit card debts and to hold Chad harmless.

Ann testified that Chad was not cooperative in assigning his interest in the Thrivent Financial T.S.A. to her. The dissolution decree required the parties to cooperate in obtaining approval of a qualified domestic relations order transferring the T.S.A. Account to Ann. (Exhibit 1, page 7.) Ann said that in December 2004 she received a congratulatory note on the transfer.

When Ann was unable to keep up with the payments on her debts, she filed her bankruptcy petition. Until the filing, she had made some payments on all the debts.

Chad objects to Ann's claim of an exemption in the homestead. He contends that her obligation under the dissolution decree to hold him harmless from the two remaining credit card debts is an exception to her right to claim the

6

homestead as exempt. He argues that it is inequitable to let her discharge the debts she was required to pay under the decree and still exempt the assets she was awarded in consideration of her obligation to pay these debts.

Iowa Code § 561.16 provides that "[t]he homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary." Chad contends that the statute which prevents Ann's exemption of the home is Iowa Code § 598.21(1) which authorizes Iowa district courts in dissolution proceedings to divide the property of the parties and to transfer title accordingly.

The problem with Chad's contention is that he treats the authorization to divide marital property as an implicit exception to the homestead right of a spouse receiving transfer of the parties' homestead. I disagree that the statute has such a broad effect. Certainly, Iowa Code § 598.21, the statute which grants Iowa courts the power to make an equitable distribution of property in a divorce proceeding, "is a 'special declaration of statute' which makes the homestead laws ineffective to bar judicial sale or other disposition of the homestead in adjusting the parties' property rights." Kobriger v. Winter, 263 N.W.2d 892, 894 (Iowa 1978). Notwithstanding the homestead rights which may be provided by Iowa Code § 561.16, the Iowa courts have authority "to make alimony or property settlement a lien on a homestead awarded one of the parties." Id.; In re Marriage of

7

Belz, 541 N.W.2d 894, 895 (Iowa 1995); Luedecke v. Luedecke, 192 N.W. 515, 516 (Iowa 1923). Also, the court may order the homestead sold, and the proceeds paid to a creditor. In re Marriage of Tierney, 263 N.W.2d 533, 534-35 (Iowa 1978).

Parties to a marriage, in divorcing, are entitled to a just and equitable share of marital property. In re Marriage of Siglin, 555 N.W.2d 846, 849 (Iowa App. 1996). "What constitutes a just and equitable award depends on the particular circumstances of each case, after consideration of all the recognized criteria." Id. (citing In re Marriage of Hanson, 475 N.W.2d 660, 662 (Iowa App. 1991), Iowa Code § 598.21(1)(1995)). "[T]he allocation of marital debts inheres in the property division." In re Marriage of Johnson, 299 N.W.2d 466, 467 (Iowa 1980).

There is nothing in Iowa Code § 598.21 which automatically imposes a lien against homestead property to effectuate an award of alimony or property settlement. Nor does Iowa Code § 598.21 explicitly limit the claims of homestead as against the former spouse. There is also no such limitation in Iowa Code § 561.21, which provides statutory exceptions to the homestead exemption.

The Iowa District Court, in its decree, did neither. In fact the court refused Ann's request that the court impose a judicial lien against the homestead to secure the credit card debt. (Exhibit 1.) The court awarded the home to Ann and gave her the authority, if she chose, to liquidate the home to

8

pay the debt.  (Id., page 4.)  The court also refused Chad's request that Ann be required to pay the credit card debts immediately or to refinance them.  (Exhibit 2.)  The court denied Chad's request that the court revisit the property settlement in the event that Ann filed bankruptcy.  (Exhibit 3.)

I conclude that neither Ann's obligations on the two credit cards nor her obligation to Chad to hold him harmless from those joint debts are obligations for which her homestead may be held liable.  The objection to the claim of the homestead will be overruled.

Chad objects also to Ann's claim of exemption in the Thrivent IRA.  He makes three arguments.  He says that it would be inequitable to permit her to exempt the IRA because the account was transferred to her in consideration of her paying all of the couple's credit card debts which she has failed to do.  Second, he argues that she funded the IRA in an amount in excess of the limits provided in Iowa Code § 627.6.  Third, he contends that based on the evidence, the account was not transferred to Ann until after the filing of the bankruptcy petition, and therefore, at the time of filing bankruptcy, Ann had an interest only in a property settlement which is not exempt under the law.

As to Chad's first argument, there is nothing in the dissolution decree which explicitly conditions the effectiveness of the T.S.A. account transfer on Ann's payment

9

of the credit card debt. I decline to imply such a condition. Also there is nothing in the decree which limits Ann's claim of exemption in the account as to any claim by Chad.

With regard to the excess contribution objection, Chad has failed to direct the court's attention to the particular portion of Iowa Code § 627.6 allegedly violated by the allocation and transfer of the Thrivent account. His objection relates to excess funding. He may be referring to the contribution limitations described in Iowa Code § 627.6(8)(f)(4) and (6). He does not say how the amount allocated to Ann violates a contribution limitation, and he does not justify why an account created by previous contributions and transferred pursuant to a qualified domestic relations order exceeds pre-bankruptcy contribution limitations. The objector is required to do more than merely state that the transfer is excessive under Iowa exemption law.

Lastly, Chad contends that at the time Ann filed bankruptcy, the asset in question had not been transferred and was therefore merely a right in a property settlement, which is not exempt. Under Fed.R.Bankr.P. 4003(c), Chad bears the burden of proof that the exemption is not properly claimed. He relies on Ann's testimony that she got a letter after the bankruptcy filing congratulating her on some aspect of the asset or its transfer to her. That is not sufficient evidence that Ann did not own an exemptible interest in an IRA on the date of filing.

Chad has not proven fact or cited law sufficient to support his objection to Ann's claim of exemption in the IRA. The objection will be overruled.

IT IS ORDERED that Chad LeStrange's objection to debtor's claim of exemption in her homestead and an IRA are overruled. Judgment shall enter accordingly.

DATED & ENTERED: March 31, 2005

William L. Edmonds, Bankruptcy Judge

11